# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **OHIOANS AGAINST CORPORATE BAILOUTS, LLC,** <br> **aka OHIOANS AGAINST CORPORATE BAILOUTS,** | : **Case No. 2:19-CV-4466** |
| **and** | : **Judge _____** |
| **DAVID J. ECKERT,** | : |
| **and** | : |
| **BRANDON S. LYNAUGH,** | : |
| **and** | : |
| **TREVOR J. VESSELS,** | : |
| **and** | : |
| **JOHN DOE #1,** | : |
| **Plaintiffs,** | : |
| **v.** | : |
| **FRANK LaROSE,** *in his official capacity* <br> *as* **OHIO SECRETARY OF STATE,** | : |
| **and** | : |
| **ZACH KLEIN, in his official capacity** <br> **as CITY ATTORNEY OF COLUMBUS, OHIO,** | : |
| **Defendants.** | : |

## COMPLAINT FOR DECLARATORY JUDGMENT AND
## PRELIMINARY AND PERMANENT INJUNCTIONS

Now come the Plaintiffs OHIOANS AGAINST CORPORATE BAILOUTS, LLC;

DAVID J. ECKERT; BRANDON S. LYNAUGH; TREVOR J. VESSELS; and JOHN DOE #1,

by and through their undersigned counsel, and allege as follows:

## INTRODUCTION

1.    In this complaint, Plaintiffs seek a declaratory judgment, together with preliminary and permanent injunctive relief enjoining the Defendants from enforcing against Plaintiffs certain restrictions relating to the exercise of their referendum rights under the Ohio Constitution, as well as their rights to freedom of speech, freedom to petition the government for redress, and freedom of association under the First Amendment of the United States Constitution and their right to equal protection of the law under the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiffs challenge and seek the following:

a.    In *Count One*, Plaintiffs seek to enjoin the enforcement of the requirement in Ohio Revised Code § 3501.381 that any person who compensates another person, or is compensated by another person, for supervising, managing, or otherwise organizing any effort to obtain signatures for a statewide referendum petition must pre-register with the Secretary of State by filing a "Form 15" before engaging in core political speech.  Ohio Revised Code § 3501.381 is unconstitutional because:

(i)    the statute imposes pre-registration mandates upon the proponent of a statewide candidate, or initiative or referendum issue, but not upon those actively opposing such advocacy (including circulating a contra-petition) and, thus, constitutes a content-based regulation of core political speech that does not satisfy the requirements of strict scrutiny;

(ii)    the statute does not provide the heightened level of clarity and precision demanded of criminal statutes implicating First Amendment rights and, thus, does not sufficiently apprise regulated parties of what is specifically

required of them to avoid the draconian and criminal penalties, as well as allowing for enforcement in an arbitrary and discriminatory manner; and

(iii)    the statute imposes undue burdens upon the fundamental rights of freedom of speech, freedom to petition the government for redress, and freedom of association without being substantially related to important governmental interests that sufficiently outweigh the burden imposed upon First Amendment rights.

b.    In *Count Two*, Plaintiffs seek injunctive relief and a declaratory judgment that the procedure set forth in Ohio Rev. Code § 3519.01(B), which includes the requirement that proponents of a referendum petition submit and obtain governmental approval of a "summary" of their referendum before any petitions may be circulated. The statute and its requirements severely impact and burden the full and robust exercise of Plaintiffs' fundamental right to vote and their rights to freedom of political speech, freedom to petition the government for redress, and freedom of association, as the statute severely reduces the constitutionally-permitted number of days by which proponents of a referendum may gathering signatures.

c.    In *Count Three*, Plaintiffs seek to enjoin the enforcement of the mandate in Article II, Section 1g of the Ohio Constitution that violates the "one-man, one-vote" principle embodied in the Fourteenth Amendment as such provision requires a certain distribution of signatures on an initiative or referendum petition between all of the counties in the State of Ohio thus, unconstitutionally amplifying the voice and advocacy of certain voters over others.

**PARTIES**

2.    Plaintiff OHIOANS AGAINST CORPORATE BAILOUTS, LLC, aka OHIOANS AGAINST CORPORATE BAILOUTS (the "COMMITTEE") is a ballot issue political action committee seeking to subject certain portions of Amended Substitute House Bill 6 ("H.B. 6") to the Ohio voters for their approval or rejection (the "*Referendum Petition*").

3.    Plaintiffs DAVID J. ECKERT, BRANDON S. LYNAUGH, and TREVOR J. VESSELS are residents and electors of Franklin County, Ohio. They are members of the COMMITTEE and are the committee of individuals designated under Ohio Rev. Code § 3519.02 to represent the petitioners in all matters concerning or relating to the *Referendum Petition*. BRANDON LYNAUGH is the Treasurer of the COMMITTEE.  These Plaintiffs have signed numerous statewide petitions and desire to sign such petitions in the future.  These Plaintiffs also desire and intend to be involved in ballot question committees for future statewide initiative or referendum issues, which will include being compensated to supervise, manage, and collect signatures for statewide initiative and referendum petitions in Ohio.

4.    Plaintiff JOHN DOE #1 is an individual who has worked in coordinating and supervising petition-signature-gathering efforts in Ohio in the past and who desires and intends to assist in the petition-signature-gathering effort by the COMMITTEE.  JOHN DOE #1 has contacted the COMMITTEE about working as a manager of a team of petition circulators and to be compensated as such.  Based on the prevalent harassment and hostility that petition circulators for the COMMITTEE have faced with respect to the *Referendum Petition*, however, JOHN DOE #1 will not participate as a manager of a  petition circulation team as he is required to file a Form 15 so as to be in compliance with Ohio Rev. Code § 3501.381.  JOHN DOE #1 desires to exercise

fully and robustly his First Amendment rights to freedom of speech, freedom to petition the government for redress, and freedom of association, but to do so anonymously. JOHN DOE #1 will not participate in the initiative and referendum process as a paid-petition manager as he is required to file the Form 15 with FRANK LaROSE, the Secretary of State, and as such filing will be made public by FRANK LaROSE. Absent injunctive relief, JOHN DOE #1 will not become a paid-petition-circulation manager and will forgo the full and robust exercise of his constitutional rights.

5. All individual Plaintiffs also desire and intend to be involved in ballot question committees for future statewide initiative or referendum issues in Ohio, including being compensated to supervise, manage, and collect signatures for such statewide initiative and referendum petitions.

6. Defendant FRANK LAROSE is the Ohio Secretary of State and is named in his official capacity. Pursuant to Ohio law, the Secretary's statutory duties as set forth in Ohio Rev. Code § 3501.05 include: (i) reviewing and examining referendum petitions for compliance with Ohio law (including Ohio Rev. Code § 3501.381) and, ultimately, certifying (or rejecting) the measure sought to be referred in the referendum petition for placement on the ballot; and (ii) reporting a failure to comply with the pre-registration requirements of Ohio Rev. Code § 3501.381 to the relevant criminal enforcement agency.

7. Defendant ZACH KLEIN is the City Attorney of Columbus, Ohio, and, as such, is responsible under state law for criminal enforcement of Ohio Rev. Code § 3501.381 in the City of Columbus. ZACH KLEIN is named herein in his official capacity only.

## JURISDICTION AND VENUE

8.    The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, in that this action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), because it is brought to redress deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), because it seeks to secure equitable relief under Acts of Congress, specifically 42 U.S.C. § 1983, that provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a) and Federal Rule of Civil Procedure 57, because it is an action to secure declaratory relief; under 28 U.S.C. § 2202 and Federal Rule of Civil Procedure 65, because it seeks to secure preliminary and permanent injunctive relief; and under 42 U.S.C. § 1988 in that Plaintiffs pray for relief regarding costs, including reasonable attorneys' fees.

9.    Venue in this action is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 82.1, in that the Defendants are situated within this judicial district and division.

## ALLEGATIONS IN SUPPORT OF ALL CLAIMS FOR RELIEF

*The Constitutional Framework for the Initiative and Referendum Process in Ohio*

10.    The Ohio Constitution expressly reserves the right of referendum to the people. Indeed, in Article II, Section 1 of the Ohio Constitution, the people have reserved expressly "the power to adopt or reject any law, section of any law or any item in any law appropriating money passed by the general assembly."

- 6 -

11. The basic requirements for a referendum petition are set forth in Article II, Sections 1c & 1g of the Ohio Constitution. To submit a law enacted by the General Assembly to the electors through referendum, proponents must submit, within 90 days after the law has been filed by the Governor with the Ohio Secretary of State, a petition containing signatures of registered electors totaling six percent of the electors who voted in the last gubernatorial election. The law does not go into effect until after this 90-day period. *Ohio Const. art. II, sect. 1c.*

12. The number of signatures that a referendum petition must contain is equal to six percent of the total number of votes cast for the office of governor at the immediately preceding election for that office. For example, in 2019, the number of signatures that must be submitted to qualify a referendum petition for the ballot is 265,774.[1]

13. If the referendum petition is submitted prior to 60 days before the next succeeding general election and contains a sufficient number of valid signatures, the referendum is submitted to the voters at that election; if such a petition is submitted subsequent to 60 days before the next general election, the referendum is submitted to the voters at the general election in the following year.

### *Procedural Requirements*

14. Section 1g, Article II of the Ohio Constitution contains detailed procedural requirements for referendum petitions, including the following:

a. A referendum petition may be presented in separate parts, but each part must contain a full and correct copy of the title and text of the law sought to be referred.

---

[1] https://www.sos.state.oh.us/globalassets/elections/historical/governors_percentage_chart_20182.xlsx (last checked October 4, 2019).

b.     Each signer must be an elector of the state and shall place on such petition after his name the date of signing and his place of residence.

c.     To each part of such petition shall be attached the statement of the circulator, as may be required by law, that he witnessed the affixing of every signature.

d.     The referendum petition and the signatures on the referendum part-petitions are presumed to be "in all respects sufficient," unless they are proved otherwise not later than 40 days before the election, in which case the petitioner is afforded an additional 10 days to submit additional signatures.

15.     Section 1g also provides in detail the method of preparing arguments and explanations of the law to be referred, by proponents and opponents of the law, and provides for the full text of the law along with the arguments and explanations to be published by the Ohio Secretary of State in newspapers of general circulation in every county of Ohio.

### County Distribution Rule-Distribution Mandate

16.     In addition to requiring a minimum number of valid signatures on a petition, Article II, Section 1g of the Ohio Constitution further requires that the referendum petition bear the signatures of at least three percent of the electors who voted in the last gubernatorial election from no less than 44 of the 88 counties in the State of Ohio.  This requirement, which also applies to initiative petitions, is hereinafter referred to as the "*County Distribution Rule*".

17.     Similar to the standard for the total number of signatures, for a county to be included as one of the 44 counties, *i.e.*, for its "vote" as a county to count to satisfying the county-distribution mandate, the number of signatures that must be submitted from a county is based on the total number of votes for governor in that county that were cast in the last gubernatorial election.

18.   For example, in order for the "vote" of the electors in Cuyahoga County to count toward satisfying the county-distribution mandate for a referendum petition in 2019, the referendum petition must contain at least 14,569 valid signatures of electors from that county.

19.   But in order for the "vote" of the electors of Vinton County to count toward satisfying the *County Distribution Rule* for a referendum petition in 2019, the referendum petition need contain only 121 valid signatures of electors from that county.

### Statutes Regulating the Referendum Process

20.   In addition to the detailed and "self-executing" provisions in Article II, Section 1g of the Ohio Constitution, that Section also grants limited authority to the Ohio General Assembly to enact laws to "facilitate" the exercise by Ohio citizens of their constitutionally-guaranteed right of referendum.  Indeed, Article II, Section 1g of the Ohio Constitution concludes, as follows:

> The foregoing provisions of this section shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved.

21.   Pursuant to this limited grant of authority, the Ohio General Assembly has enacted legislation to ostensibly facilitate the statewide referendum process.  The legislation is codified in Chapter 3519 of the Ohio Revised Code.  The Ohio General Assembly has also enacted several general petition requirements in Chapter 3501 of the Ohio Revised Code that also apply to a statewide-referendum petition.

22.   Although certain statutes in these Chapters arguably facilitate the reserved power of referendum, other such statutes restrict on their face that reserved power, in violation of both the Ohio Constitution and the United States Constitution.   Plaintiffs' claims challenge the constitutionality of two of these statutory provisions.

*Summary Prerequisites*

23.  Ohio Revised Code § 3519.01(B) requires proponents of a referendum petition, prior to circulating their referendum petition, to submit a preliminary petition containing at least 1,000 signatures of Ohio electors and a proposed "summary" of the law sought to be referred by referendum to the Secretary of State and Attorney General.

24.  This "*Summary Statute*", *i.e.*, Ohio Revised Code § 3519.01(B), provides:

> (B) (1) Whoever seeks to file a referendum petition against any law … shall, by a written petition signed by one thousand qualified electors, submit the measure to be referred and a summary of it to the secretary of state and, on the same day or within one business day before or after that day, submit a copy of the petition, measure, and summary to the attorney general.
>
> (2) Not later than ten business days after receiving the petition, measure, and summary, the secretary of state shall do both of the following:
>
>> (a) Have the validity of the signatures on the petition verified;
>>
>> (b) After comparing the text of the measure to be referred with the copy of the enrolled act on file in the secretary of state's office containing the law, section, or item of law, determine whether the text is correct and, if it is, so certify.
>
> (3) Not later than ten business days after receiving a copy of the petition, measure, and summary, the attorney general shall examine the summary and, if in the attorney general's opinion, the summary is a fair and truthful statement of the measure to be referred, so certify.

25.  Other sections of Chapter 3519 of the Ohio Revised Code give effect to the *Summary Statute* in terms of a referendum proponent's eligibility to qualify a referendum petition for the ballot:  Ohio Revised Code § 3519.05 requires that the Attorney General's certification appear on the referendum petition; Ohio Revised Code § 3519.06 states that a referendum petition is not properly verified if it does not contain, *inter alia*, the summary and certification required by Ohio Revised Code §§ 3519.01(B) & 3519.05; and, finally, Ohio Revised Code § 3519.15 provides that

- 10 -

the signatures on part-petitions that are not properly verified are not to be counted by the Secretary. (These statutes, along with the *Summary Statute*, are referred to as the "*Summary Prerequisites*").

26.  The Ohio Constitution does not require a referendum petition to include a summary certified by the Attorney General, nor does it require the petition to be certified by the Secretary of State.  To the contrary, Article II, Section 1c of the Ohio Constitution states:

> When a petition, signed by six per centum of the electors of the state and verified as herein provided, shall have been filed with the secretary of state within ninety days after any law shall have been filed by the governor in the office of the secretary of state, ordering that such law … be submitted to the electors of the state for their approval or rejection, *the secretary of state shall submit to the electors of the state for their approval or rejection such law* … at the next succeeding regular or general election in any year occurring subsequent to sixty days after the filing of such petition, and no such law, section or item shall go into effect until and unless approved by a majority of those voting upon the same. (Emphasis added.)

27.  Despite this clear language, the Secretary of State refuses to accept referendum petitions for filing unless they contain both the Secretary's and the Attorney General's certification, neither of which are required by the Ohio Constitution, neither of which facilitate the operation of the reserved right of the people to a referendum, and both of which limit and restrict the people in their exercise of that right, as well as their rights to freedom of speech, freedom to petition the government for redress, and freedom of association

28.  The 90-day period for collecting signatures and submitting a petition are not tolled while the Attorney General and Secretary of State are reviewing and approving the summary and petition at their discretion.

29.  Referendum petitions in the past have consistently suffered the same fate and have had their rightful 90 days severely restricted as a result of the *Summary Prerequisites*.  For example, in 2011, 47 days elapsed before the summary of a referendum petition on H.B. 194 was

- 11 -

certified after having to resubmit the proposed petition. And in 2008, a petition to state a referendum to repeal the Payday Lending Bill #3 was delayed 37 days.

### *Pre-Registration Mandate Related to Petition Organizing Efforts*

30.  An additional burden imposed by the Ohio General Assembly on the right of referendum and, with it, rights to freedom of speech, freedom to petition the government for redress, and freedom of association, is found in Ohio Rev. Code § 3501.381.  This statute provides:

> (A) (1) Any person who will receive compensation for supervising, managing, or otherwise organizing any effort to obtain signatures for a … statewide referendum petition shall file a statement to that effect with the office of the secretary of state before any signatures are obtained for the petition or before the person is engaged to supervise, manage, or otherwise organize the effort to obtain signatures for the petition, whichever is later.
>
> (2) Any person who will compensate a person for supervising, managing, or otherwise organizing any effort to obtain signatures for a … statewide referendum petition shall file a statement to that effect with the office of the secretary of state before any signatures are obtained for the petition or before the person engages a person to supervise, manage, or otherwise organize the effort to obtain signatures for the petition, whichever is later.
>
> (B) The secretary of state shall prescribe the form and content of the statements required under division (A) of this section.
>
> (C) Whoever violates division (A) of this section is guilty of a misdemeanor of the first degree, and the petition for which a person was compensated for supervising, managing, or otherwise organizing the effort to obtain signatures shall be deemed invalid.

31.  The Ohio Supreme Court has held that, if any forms required to be filed under Ohio Rev. Code § 3501.381 are not submitted, then the entire petition, not a part-petition, must be invalidated.  *Ohio Renal Assn. v. Kidney Dialysis Patient Protection Amendment Commt.*, 154 Ohio St.3d 86, 92, 2018-Ohio-3220, ¶24.

32.  According to an opinion issued by the Ohio Attorney General shortly after the law was enacted, Ohio Rev. Code § 3501.381 "is part of Ohio's 'arsenal' to 'police lawbreakers among

petitions circulators.' It allows the State to identify those who will be responsible for supervising or organizing signature gathering efforts, and thereby hold them accountable for any fraudulent practices…." *Ohio Att'y Gen'l Opin. No. 2006-004, at p. 2-39.* Notably, the opinion failed to recognize that the statute only allows the State to identify those who will be *compensated* for supervising or organizing signature gathering efforts. The opinion did say, however, that the statute "works hand-in-hand" with Ohio Rev. Code § 3599.111, which prohibits any person from paying petition circulators on a "per signature" or "per volume" basis and mandates that paid circulators be paid only on the basis of time worked. *Ohio Att'y Gen'l Opin. No. 2006-004, at p. 2-38.* But this paid-circulator statute that was enacted to partner with the pre-registration mandate of Section 3501.381 was struck down by the Court in *Citizens for Tax Reform v. Deters*, 462 F. Supp.2d 827 (S.D. Ohio 2006), in which the Court held that the section imposes a severe burden on the political rights of petition proponents, a burden neither justified by a compelling state interest nor narrowly tailored to achieve any such interest. The Court declared the statute unconstitutional and enjoined the State from enforcing it. That decision was upheld by the Sixth Circuit Court of Appeals. *Citizens for Tax Reform v. Deters*, 518 F.3d 375 (6th Cir. 2008).

33. As required by Ohio Rev. Code § 3501.381, the Secretary of State has prescribed a form – identified by the Secretary as "Form 15" – which petitioners are required to use in order to comply with the statute.[2] Form 15 requires the name of the individual or entity that will be receiving or giving compensation; the name of the referendum supported; the dates that the petition will be circulated; and the address, phone number, and email address of the named person.

---

[2] Form 15 is available on the Secretary's website at
https://www.sos.state.oh.us/globalassets/elections/forms/15.pdf

- 13 -

*The COMMITTEE's Current Referendum Petition Effort*

      *Efforts to Comply with the Summary Prerequisite*

34. The COMMITTEE is in the midst of a time-sensitive effort to qualify for the ballot, through a petition effort a referendum on certain sections of H.B. 6, which authorizes the collection of an electric surcharge on Ohio retail customers over the course of several years, which charges will be placed in a fund and paid out to owners of nuclear-and-solar-powered electric plants over those years, as well as several other provisions, including the reduction of renewable energy requirements in the state.

35. H.B. 6 was enacted by the General Assembly and signed by the governor on July 23, 2019. H.B. 6 is scheduled to become effective on October 22, 2019. Thus, under Article II, Section 1c of the Ohio Constitution, in order for H.B. 6 to be submitted to the electors for their approval or rejection at the general election in 2020, the COMMITTEE is required to submit to the Secretary, by no later than October 22, 2009, a referendum petition containing the valid signatures of 265,774 Ohio electors, with the additional requirement that a certain minimum of signatures be obtained from at least 44 of the 88 counties in the State of Ohio.

36. In furtherance of the exercise of its referendum rights, on Monday, July 29, 2019, the COMMITTEE filed a proposed petition, with a summary and 1,000 signatures, with the Ohio Attorney General and Secretary of State. This initial proposed petition's summary was rejected by the Ohio Attorney General fourteen (14) days later on Monday, August 12, 2019.

37. On Friday, August 16, 2019, the COMMITTEE filed with the Ohio Secretary of State and the Ohio Attorney General a second proposed summary of its referendum petition. Thirteen (13) days later, on Thursday August 29, 2019, the Ohio Attorney General certified that the proposed summary of H.B. 6 set forth in the proposed petition was a fair and truthful statement of

H.B. 6. The next day, Friday, August 30, 2019, the Ohio Secretary of State certified that the initial submission over a month earlier contained a sufficient number of valid signatures and that an accurate copy of H.B. 6 was attached to the proposed petition.

38. Thus, over a month after passage of H.B. 6 and a month after the COMMITTEE first tendered its proposed summary and initial set of signatures to the Ohio Attorney General and the Secretary of State, could finally begin circulating it petitions so as to fully and robustly exercise its rights to freedom of speech, freedom to petition the government for redress, and freedom of association.

39. The COMMITTEE has been engaged in signature gathering since the August 30, 2019 certification.

40. As a result of the *Summary Prerequisites* and the Form 15 requirement, the COMMITTEE was not able to begin to exercise its referendum rights until fully 38 days into the 90-day collection period, nearly half of the time allotted.

41. The COMMITTEE's *Referendum Petition* and associated activities have been confronted and challenged by an organized, well-funded and overly aggressive opposition effort with support from the power companies that stand to benefit financially from H.B. 6. The tactics against the COMMITTEE and its supporters and efforts have involved harassment, assault, and bribery of petition circulators. These illegal activities have further cut into the 90-days given to exercise their referendum rights and secure the right to a referendum by the Ohio electorate.

42. Unlike the COMMITTEE and its supporters which must comply with the pre-registration mandates in Ohio Rev. Code § 3501.381, the organized and well-funded efforts in opposition to the efforts of the COMMITTEE are not subject to the same or similar pre-registration requirements.

- 15 -

43.   The COMMITTEE and its supporters must comply with the pre-registration mandates of Ohio Rev. Code § 3501.381 before fully and robustly exercising their fundamental rights of freedom of speech, freedom to petition the government for redress, and freedom of association with respect to the referendum-petition effort; the organized and well-funded opposition has not such pre-registration mandate.

### *Efforts to Comply with the Pre-Registration Mandate of Ohio Rev. Code § 3501.381*

44.   The requirement under Ohio Rev. Code § 3501.381 that petition managers, supervisors, organizers, and circulators file a Form 15 with the Secretary of State disclosing their identities, addresses, and personal information has made the harassment and intimidation efforts possible and has discouraged persons from participating in the referendum process.

45.   The COMMITTEE has contracted with Advanced Micro Targeting, Inc., ("AMT") to help supervise and manage the collection of signatures in support of its referendum petition.

46.   The COMMITTEE started filing Form 15s on July 26, 2019, which is before its proposed petition was even submitted to the Ohio Attorney General or the Secretary of State.

47.   To date, the COMMITTEE has filed one thousand one hundred seventy-five (1,175) Form 15s from its managers, supervisors, and circulators.

48.   An abundance of caution in having individuals complete and file Form 15s is undertaken because Ohio Rev. Code § 3501.381 has severe and draconian penalties for the singular failure to timely and fully complete with the pre-registration mandates.  Ohio Rev. Code § 3501.381 imposes criminal penalties for any violation of its pre-registration mandates and, upon a single violation of its pre-registration mandates, the entire petition effort would be invalidated.

49. The COMMITTEE collects Form 15s through AMT from all individuals and vendors who manage, supervise, or circulate before they can begin working on the petition effort. These Form 15s are then hand-delivered to the Secretary of State by the COMMITTEE.

50. AMT is required to expend hundreds of hours collecting and processing all the Form 15s required, as well as keeping a record and database of those submitted.

51. Michael Roberson, the CEO of AMT, estimates that he has had to spend 40 hours per week on the collecting and processing of Form 15 information and forms.

52. One staff member of AMT is required to spend 2-3 hours every day collecting and processing Form 15s.

53. Another staff member of AMT estimates that he must spend 10-15% of his time collecting and processing Form 15 information.

54. Yet another staff member of AMT estimates that she is required to spend 1-2 hours a day on Form 15 requirements.

55. And another staff member of AMT estimates that she has had to spend 4-5 hours every day working on Form 15-related collection and processing.

56. A fifth staff member of AMT estimates that he has spent 5 hours a day on the collection and processing of Form 15 information and forms. He estimates that a new circulator requires 1-8 hours to process their Form 15 in order to comply with the requirements of Ohio law. He also estimates that AMT has lost 15-20 potential workers because of the burden involved in complying with the Form 15 process.

57. In short, the COMMITTEE and its team must dedicate hundreds of hours and the equivalent of several full-time staff in order to comply with the pre-registration mandate.

*Harassment and Intimidation Resulting from the Pre-Registration Mandate*

58. The name, address, and other personal information of every compensated individual and vendor involved in the referendum circulation process is disclosed by the Secretary of State through the pre-registration mandate.

59. As a result, the organized, well-funded and overly aggressive opposition to the *Referendum Petition* has been able to target individuals and vendors and engage in harassment and other hostilities, including violence, in an effort to interfere with and prevent the full and robust exercise of the Plaintiffs' and others' fundamental right to freedom of speech, freedom to petition the government for redress, freedom of association, through the collection of signatures on the *Referendum Petition*.

60. Several examples of this harassment and intimidation have been widely reported in news media.[3]

---

[3]    *E.g.*, *'Blockers' Should Not Resort to Intimidation of Petitioners*, Marietta Times, Oct. 4, 2019, *available at* http://www.mariettatimes.com/opinion/editorials/2019/10/blockers-should-not-resort-to-intimidation-of-petitioners/

*Ohio AG Investigates New Allegations in Fight Over Energy Bill Referendum*, Dayton Daily News, Oct. 3, 2019, *available at* https://www.daytondailynews.com/news/local/ohio-investigates-new-allegations-fight-over-energy-bill-referendum/CpAY57u8nKZFUW9mokiWDI

*Three Political Petitioners Arrested at Cincinnati State*, Cincinnati Enquirer, Oct. 3, 2019, *available at* https://www.cincinnati.com/story/news/crime/crime-and-courts/2019/10/03/three-political-petitioners-arrested-cincinnati-state/3844326002/

*Nuclear Bailout Supporters Clashing with Referendum Petitioners in the Field*, Statehouse News Bureau, Oct. 1, 2019, *available at* https://www.statenews.org/post/nuclear-bailout-supporters-clashing-referendum-petitioners-field ;

*Ohio AG Dave Yost Warns HB 6 Petition "Blockers" About Aggressive Tactics*, Norwalk Reflector, Oct. 1, 2019, *available at* http://www.norwalkreflector.com/frontpage/2019/10/01/Ohio-AG-Dave-Yost-warns-HB-6-petition-blockers-about-aggressive-tactics

*Attorney General Yost to Address Harassment and Intimidation in State's Petition Process*, Cleveland WEWS-TV, Sept. 30, 2019, *available at* https://www.news5cleveland.com/news/state/attorney-general-yost-to-address-harassment-and-intimidation-in-states-petition-process ;

- 18 -

61.  The harassment and intimidation have become so prevalent and widespread that the Ohio Attorney General has formally written to the United States Attorneys of the Northern and Southern Districts of Ohio to alert them of the targeting, harassment, and intimidation of petition circulators and signers.[4]  The reason given for the letter was to alert the U.S. Attorneys that some of the harassment and intimidation may involve violations of federal law, which "makes it a crime for two or more persons to conspire to injure, oppress, threaten or intimidate any person in the free exercise of any right secured by the U.S. Constitution, including the right to circulate petitions."

62.  Because of the harassment and intimidation resulting from the disclosure of personal information through the pre-registration mandate, JOHN DOE #1, who desires and plans to join the referendum effort as a paid manager of a circulation team, will not file a Form 15 and, therefore, is forced to forgo his First Amendment speech and associational rights to the referendum and petition process.

## COUNT ONE
(CHALLENGE TO PRE-REGISTRATION MANDATE
IN OHIO REV. CODE § 3501.381 UNDER 42 U.S.C. § 1983)

63.  Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

---

*Yost warns House Bill 6 supporters to not harass referendum workers*, The Columbus Dispatch, Sept. 30, 2019, *available at* https://www.dispatch.com/news/20190930/yost-warns-house-bill-6-supporters-to-not-harass-referendum-workers?template=ampart

*Opponents of House Bill 6 call "dirty tricks" on fake "petition"*, The Columbus Dispatch, Sept. 23, 2019, *available at* https://www.dispatch.com/news/20190923/opponents-of-house-bill-6-call-dirty-tricks-on-fake-petition

[4]    The letter of Ohio Attorney General Dave Yost to the United States Attorneys for Ohio, Ben Glassman and Justin Herdman, is available at https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Letter-for-US-Attorney-in-Northern-Southern-Distri.aspx .

64. Ohio law requires certain persons who are compensated for their involvement in the initiative and referendum process to register with the Ohio Secretary of State before engaging in the process. *Ohio Rev. Code § § 3501.381.*

65. Neither this statute nor any other provision of Ohio law requires persons who supervise, manage, or otherwise organize an effort to obtain signatures on a statewide petition on a volunteer basis to register with the Ohio Secretary of State.

66. Neither this statute nor any other provision of Ohio law requires persons who supervise, manage, or otherwise organize, for compensation or not, in opposition to an effort to obtain signatures on a statewide petition on to register with the Ohio Secretary of State.

67. In July 2019, individuals and entities began filing Form 15s with the Secretary and are continuing to file them throughout the effort, as mandated by Ohio Rev. Code § 3501.381.

68. Plaintiff JOHN DOE #1 desires and plans to participate in the referendum effort as a paid petition managers but will not do so unless the pre-registration mandates in Ohio Rev. Code § 3501.381 are removed, for fear of harassment and intimidation from opponents of the referendum effort.

69. The harassment and intimidation by the organized, well-funded and overly aggressive opposition to the *Referendum Petition* are made possible by the publication and dissemination of personal identifying information by FRANK LaROSE through the release of the Form 15s filed in his office.

70. All alleged acts or threatened acts of the FRANK LaROSE, by and through his respective officers, agents, servants, employees, and persons acting at his behest, were done and continue to be done under the color and pretense of state law.

- 20 -

71. As alleged in greater detail below, the pre-registration mandate to file Form 15s violates Plaintiffs' federal constitutional rights, including the fundamental rights to freedom of speech, freedom to petition the government for redress, freedom of association, and the right to do so anonymously, as well as the right to due process of law, all of which are guaranteed by the First and Fourteenth Amendments to the United States Constitution.

72. As a direct result of the violation and threatened violation of Plaintiffs' constitutional rights by FRANK LaROSE and Ohio Rev. Code § 3501.381, Plaintiffs are suffering and will continue to suffer irreparable harm for which there is no adequate remedy at law.

COUNT ONE:
FIRST CLAIM FOR RELIEF
*The Pre-Registration Mandate Violates Plaintiffs' Rights to Freedom of Speech, Freedom to Petition the Government for Redress, and Freedom of Association, and the Freedom to do so Anonymously, all as Guaranteed by the First Amendment*

73. Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

74. The pre-registration mandate in Ohio Rev. Code § 3501.381 requires a person who will compensate or be compensated for supervising, managing, or otherwise organizing an initiative or referendum petition effort to file a statement before any part-petitions are circulated. But, to the extent that this requirement and disclosure only applies to speech supporting a referendum petition and not to speech opposing such an effort, the mandate constitutes a content-based restriction on speech.

75. The pre-registration mandate in Ohio Rev. Code § 3501.381 is not narrowly tailored to achieve a compelling government interest.

76. The pre-registration mandate in Ohio Rev. Code § 3501.381 is unconstitutional both on its face and as-applied to Plaintiffs.

77. The penalty for violating the pre-registration mandate statute is not narrowly tailored to achieve a compelling government interest.

COUNT ONE:
SECOND CLAIM FOR RELIEF
*The Pre-Registration Mandate Statute Violates*
*Plaintiffs' Right to Due Process, as Guaranteed by the Fourteenth Amendment*

78. Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

79. The pre-registration mandate in Ohio Rev. Code § 3501.381, to the extent it may be interpreted to require invalidation of an entire referendum petition for noncompliance and imposes criminal penalties for violations of the filing requirement, violates Plaintiffs' right to due process under the Fourteenth Amendment because the statute is unconstitutionally vague and overbroad.

80. The pre-registration mandate in Ohio Rev. Code § 3501.381 fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits and, specifically, whether he or she is subject to the requirements to file a Form 15.

81. Through expansive, though indefinite, language, Ohio Rev. Code § 3501.381 applies not only to a person supervising or managing a specific signature gathering effort, but to "any effort" by which petition signatures are obtained.

82. By the inclusion of the phrases "otherwise organizing" and tying it to "any effort to obtain signatures", exactly how far and what conduct triggers the pre-registration requirements of Ohio Rev. Code § 3501.381 is not readily apparent.

83. The Ohio Attorney General further added to the uncertainty or vagueness concerning the scope or application of Ohio Rev. Code § 3501.381 when he opined that candidate campaign staffs were not subject to the pre-registration mandates of Ohio Rev. Code § 3501.381 because they were "*not retained principally or even incidentally* to serve as petition signature gatherers,"

- 22 -

*Ohio Att'y Gen'l Opin. No. 2006-004, at p. 2-40*, though no indication exists when the threshold of "principally" or "incidentally" serving a petition-signature gathers is crossed.

84. The pre-registration mandate in Ohio Rev. Code § 3501.381 also authorizes or even encourages arbitrary and discriminatory enforcement.

85. The Ohio Attorney General has opined that "the requirements of R.C. 3501.381 involves questions of fact that must be resolved on a case-by-case basis by the Secretary of State." *Ohio Att'y Gen'l Opin. No. 2006-004, at p. 2-42.* And, thus, absent more objective standards, enforcement personnel, including FRANK LaROSE and ZACH KLEIN may readily enforce the draconian and criminal sanctions within Ohio Rev. Code § 3501.381 in an arbitrary and capricious manner.

## COUNT ONE:
### THIRD CLAIM FOR RELIEF
*The Pre-Registration Mandate Unduly Burdens Plaintiffs' Rights to*
*Freedom of Speech, Freedom to Petition Government for Redress and Freedom of Association,*
*and the Freedom to do so Anonymously, all as Guaranteed by the First Amendment*

86. Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

87. The pre-registration mandate in Ohio Rev. Code § 3501.381 requires a person who will compensate or be compensated for supervising, managing, or otherwise organizing an initiative or referendum petition effort to file a statement before petitions are circulated. By doing so, the statute has a chilling effect on Plaintiffs' First Amendment rights, including the freedom of speech, freedom to petition government for redress, and freedom of association, and the freedom to do so anonymously, all in violation of the First Amendment because Ohio Rev. Code § 3501.381 and the Form 15 facilitates harassment and intimidation of persons exercising their fundamental First Amendment rights by participating in the referendum circulation process.

88. Ohio Rev. Code § 3501.381, to the extent it prescribes criminal penalties for noncompliance, has a chilling effect and imposes a severe and unjustified burden upon the core political speech and association rights, in violation of the First Amendment.

89. Defendants cannot demonstrate that any interest of the State of Ohio in combating election fraud are furthered by the disclosure requirement and that those interests outweigh the significant First Amendment burden Ohio Rev. Code § 3501.381 imposes on political speech.

## COUNT TWO
### (CHALLENGE TO *SUMMARY PREREQUISITES* UNDER 42 U.S.C. § 1983)

90. Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

91. As alleged above, the *Summary Prerequisites* require referendum proponents, before they may begin collecting signatures for that petition, but after the constitutionally-prescribed time period for submission of a referendum petition has already begun, to obtain approval of a "summary" of the measure from the Ohio Attorney General.

92. All alleged or threatened acts of FRANK LaROSE, by and through his respective officers, agents, servants, employees, and persons acting at his behest, were performed and continue to be performed under the color and pretense of state law.

93. The *Summary Prerequisites*, both on their face and as applied, violate Plaintiffs' federal constitutional rights, including their fundamental right to vote, as well as their fundamental rights to freedom of speech, freedom to petition the government for redress, and freedom of association, as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

94.  As a direct result of the FRANK LaROSE's violation and threatened violation of Plaintiffs' federal constitutional rights, Plaintiffs are suffering and will continue to suffer irreparable harm for which there is no adequate remedy at law.

COUNT TWO:
FIRST CLAIM FOR RELIEF
*On Its Face, the Summary Prerequisite Violates Plaintiff Voters'*
*Fundamental Right to Vote, as Guaranteed by the Fourteenth Amendment*

95.  Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

96. The *Summary Prerequisites* impose a severe burden on the Plaintiffs-voters' fundamental right to vote.  Indeed, on its face, the *Summary Prerequisites* reduce the constitutionally mandated 90-day period for signature gathering by a minimum of 15 days, from 90 to 75.

97. If the Ohio Attorney General rejects a proposed summary, the 90-day signature-collection period is further reduced by an additional 15 to 20 days.

98.  Between 1912, when the Ohio Constitution was amended to include the right of referendum, and 1929, nine referendum petitions qualified for the ballot.  But since 1929, when a summary requirement first was imposed, only *two* referendum petitions have qualified for the ballot.  In other words, in the 17 years before the requirement was imposed, at least one referendum petition qualified for the ballot every other year.  By way of contrast, in the nearly 80 years since the Ohio General Assembly imposed this requirement, petitioners have only been able to qualify two.[5]

---

[5]  Despite these statistics, in 2006, the Ohio General Assembly increased the signature requirement for summary petitions from 100 to 1,000

99. The *Summary Prerequisites* impose a severe, unjustified and unconstitutional burden on Plaintiffs' fundamental right to vote as guaranteed by the Due Process Clause of the Fourteenth Amendment.

100. The *Summary Prerequisites* impose a severe restriction on the right to referendum guaranteed under the Ohio Constitution.

COUNT TWO:
SECOND CLAIM FOR RELIEF
*As Applied, the Summary Prerequisite Violates Plaintiff Voters'*
*Fundamental Right to Vote, as Guaranteed by the Fourteenth Amendment*

101. Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

102. As applied, the *Summary Prerequisites* impose a severe burden on Plaintiff voters' fundamental right to vote. Here, the Attorney General rejected the COMMITTEE's first proposed summary, thereby reducing the number of days for gathering signatures to 52, and severely restricting the COMMITTEE's ability to qualify a referendum petition on H.B. 6.

103. As a direct result of the Attorney General's application of the *Summary Statute* to the COMMITTEE's proposed referendum effort, the Plaintiffs' right to vote on H.B. 6 has been severely impinged upon.

104. Thus, as applied, the Summary Prerequisites has imposed and continues to impose a severe and unjustified burden on Plaintiffs' fundamental right to vote as guaranteed by the Due Process Clause of the Fourteenth Amendment.

COUNT TWO:
THIRD CLAIM FOR RELIEF
*On Its Face, the Summary Prerequisite Violates Plaintiffs' Rights to the*
*Freedom of Speech, Freedom to Petition Government for Redress and*
*Freedom of Association, all as Guaranteed by the First Amendment*

105.    Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

106.    On its face, the *Summary Prerequisites* impose unreasonable and severe burdens on Plaintiffs' core political speech and association rights by:

(a)  dramatically reducing the number of days that referendum proponents can convey their message and attempt to persuade voters to favor political change;

(b)  significantly increasing the cost of the referendum petition effort;

(c)  rendering it less likely that referendum proponents will garner the number of signatures necessary to qualify a referendum effort for the ballot; and thus,

(d)  limiting referendum proponents' ability to make a referendum effort the focus of statewide discussion.

107.    The imposition of these severe burdens on Plaintiffs' First Amendment freedom of speech, freedom to petition the government for redress, and freedom of association rights is unjustified and are not outweighed by any significant governmental interest.

108.    The *Summary Prerequisites*, to the extent that they: (i) require referendum proponents to obtain the Attorney General's certification of the content of a "summary" of the bill *before* they are permitted to exercise their constitutional rights; (ii) afford the Ohio Attorney General unfettered discretion in deciding whether to certify the proposed "summary;" and, (iii) do not include appropriate procedural protections, constitutes a prior restraint on Plaintiffs' freedom

of speech in violation of the First and Fourteenth Amendments and a denial of due process in violation of the Fourteenth Amendment.

109. Accordingly, the *Summary Prerequisites* on their face violates Plaintiffs' rights to freedom of speech, freedom to petition government for redress, and freedom of association under the First and Fourteenth Amendments to the United States Constitution.

COUNT TWO:
FOURTH CLAIM FOR RELIEF
*As Applied, the Summary Prerequisite Violates the COMMITTEE's Rights to
the Freedom of Speech and Association, as Guaranteed by the First Amendment*

110. Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

111. As applied, the *Summary Prerequisites* impose unreasonable and severe burdens on Plaintiffs' rights to freedom of speech, freedom to petition government for redress, and freedom of association by:

    (a) taking from the COMMITTEE nearly one half of the constitutionally-provided days in which it could convey its message and attempt to persuade voters in favor of political change on H.B. 6;

    (b) significantly increasing the cost of the alternative referendum petition effort;

    (c) severely restricting the COMMITTEE's ability to garner the number of signatures it needed to qualify its referendum effort on H.B. 6 for the ballot; and

    (d) severely restricting the COMMITTEE's ability to make the referendum effort on H.B. 6 the focus of statewide discussion for the 2020 general election.

112. The imposition of these undue and significant burdens on the COMMITTEE's First Amendment rights to the rights to freedom of speech, freedom to petition government for redress,

and freedom of association was unjustified and were not outweighed by any significant governmental interest.

113.     The Summary Prerequisite, to the extent that it: (i) required the COMMITTEE to obtain the Attorney General's certification of the content of a "summary" of the bill *before* they were permitted to exercise their constitutional right to referendum; (ii) afforded the Attorney General unfettered discretion to use up additional time and ultimately reject the first of the proposed "summaries;" and, (iii) did not include appropriate procedural protections against such abuses, constituted a prior restraint on Plaintiffs' freedom of speech in violation of the First and Fourteenth Amendments.

114.     Accordingly, as applied, the *Summary Prerequisites* violated Plaintiffs' rights to freedom of speech, freedom to petition government for redress, and freedom of association under the First and Fourteenth Amendments to the United States Constitution and to due process under the Fourteenth Amendment.

### COUNT THREE
(CHALLENGE TO COUNTY DISTRIBUTION REQUIREMENT
UNDER 42 U.S.C. § 1983)

115.     Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

116.     In addition to the total signature requirement for a referendum petition, Article II, Section 1g of the Ohio Constitution requires that the referendum petition bear the signatures of at least three percent of the electors from no less than 44 of the 88 counties in the state.

117.     Similar to the standard for the total number of signatures, for a county to be included as one of the 44 counties (*i.e.*, for its "vote" as a county to count) the number of signatures that

must be submitted from a county is based on the total number of votes for governor in that county that were cast in the last gubernatorial election.

118.    For example, in order for the "vote" of the electors in Franklin County (where the individual Plaintiffs reside and vote) to count toward satisfying the *County Distribution Rule* for a referendum petition in 2020, the referendum petition must contain at least 14,620 valid signatures of electors from that county.

119.    But in order for the "vote" of the electors of Monroe County to count toward satisfying the *County Distribution Rule* for a referendum petition in 2020, the referendum petition need contain only 154 valid signatures of electors from that county.

120.    According to the Ohio Department of Development's 2018 Population estimate (the "ODD estimate"), there are approximately 11,689,442 people who live in Ohio.[6]

121.    According to the Secretary, as of November 6, 2018, there are 8,070,917 registered voters in Ohio.

122.    Ohio's population is unevenly distributed throughout its 88 counties.

123.    Indeed, according to the ODD estimate, 38% of Ohio's population lives in its five largest counties; 53% of Ohio's population lives in the largest ten counties

124.    In the 2018 Ohio gubernatorial election, 4,429,582 Ohio electors voted.

125.    Based on that number, for a referendum petition to qualify for the ballot, it must contain the valid signatures of 265,774 Ohio electors.  In addition, the referendum petition must also obtain the "vote" of 44 of Ohio's 88 counties.

---

[6] https://development.ohio.gov/files/research/P5007.pdf (last checked October 4, 2019).

COUNT THREE:
CLAIM FOR RELIEF
*The County Distribution Rule Violates Plaintiffs' Rights to the*
*Equal Protection of the Laws, as Guaranteed by the Fourteenth Amendment*

126.    Plaintiffs restate the allegations in the preceding paragraphs as if fully rewritten herein.

127.    All alleged acts or threatened acts of FRANK LaROSE, by and through his respective officers, agents, servants, employees, and persons acting at her behest, were done and continue to be done under the color and pretense of state law.

128.    The *County Distribution Rule*, by assigning unevenly weighted participatory value in the referendum process in inverse relation to the population of the county in which the voter happens to reside, affords preferential treatment to residents of sparsely populated counties.

129.    This disparate treatment of voters, based solely on their county of residence, dilutes the vote of electors in more densely populated counties, which dilution violates the "one-man, one-vote" requirement of the Equal Protection Clause of the Fourteenth Amendment.

130.    The *County Distribution Rule* is not narrowly tailored to further a compelling government interest.

131.    As a direct result of violations of Plaintiffs' constitutional rights by FRANK LaROSE, Plaintiffs are suffering irreparable harm for which there is no adequate remedy at law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and ask that this Court:

A.    Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declarations shall have the force and effect of final judgment and that the Court retain jurisdiction of this matter for the purpose of enforcing the Court's Orders;

B.    Declare that the Statutes setting forth the *Summary Prerequisites*, both on their face and as applied to Plaintiffs, violate the First and Fourteenth Amendments to the United States Constitution;

C.    Declare that the *County Distribution Rule* in Article II, Section 1g of the Ohio Constitution violates the Fourteenth Amendment to the United States Constitution;

D.    Declare that Ohio Rev. Code § 3501.381, on its face and as applied to Plaintiffs, violates the First and Fourteenth Amendments to the United States Constitution;

E.    Preliminarily and permanently enjoin the Secretary of State from enforcing the *Summary Prerequisites* against Plaintiffs, and order him to extend the deadline by which Plaintiffs must submit a referendum petition on H.B. 6 in its entirety to 90 days from the date of final judgment;

F.    Preliminarily and permanently enjoin the Secretary from enforcing the *County Distribution Rule* in Article II, Section 1g of the Ohio Constitution against Plaintiffs and anyone similarly situated;

G.    Preliminarily and permanently enjoin the Secretary and the Columbus City Attorney from enforcing Ohio Rev. Code § 3501.381 against Plaintiffs and anyone similarly situated;

H.    Award Plaintiffs, pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d) and other applicable laws, their reasonable attorneys' fees and costs; and

I.    Grant such other and further relief to which the Plaintiffs may be entitled, in law or in equity.

Respectfully submitted,

*Of Counsel:*

  /s/ Curt C. Hartman

David R. Langdon

Curt C. Hartman

Joseph A. Vanderhulst*

THE LAW FIRM OF CURT C. HARTMAN

LANGDON LAW LLC

7394 Ridgepoint Drive, Suite 8

8913 Cincinnati-Dayton Rd.

Cincinnati, Ohio 45230

West Chester, Ohio 45069

(513) 379-2923

(513) 577-7380

*hartmanlawfirm@fuse.net*

*dlangdon@langdonlaw.com*
*joseph@langdonlaw.com*

Christopher P. Finney

* *pro hac vice application forthcoming*

Brian R. Shrive

FINNEY LAW FIRM, LLC

4270 Ivy Pointe Blvd., Suite 225

Cincinnati, Ohio 45245

(513) 943-6650

*chris@finneylawfirm.com*
*brian@finneylawfirm.com*

Patrick M. Quinn

BRUNNER QUINN

35 North Fourth Street, Suite 200

Columbus, Ohio 43215

(614) 241-5550

*pmq@brunnerlaw.com*

*Trial Attorneys for Plaintiffs*