IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


OHIOANS AGAINST CORPORATE BAILOUTS, LLC,
aka OHIOANS AGAINST CORPORATE BAILOUTS, *et al.*,

     **Plaintiffs,**

     **v.**

                           **Case No. 2:19-cv-4466**
                           **JUDGE EDMUND A. SARGUS, JR.**


FRANK LAROSE, in his official capacity as
Ohio Secretary of State, *et al.*,

     **Defendants.**

## ORDER

Plaintiffs are "sponsors, managers, circulators, and signers of a referendum petition" seeking to subject Amended Substitute House Bill 6 ("H.B. 6") to a referendum at the general election in 2020. (ECF No. 2 at 6). To gain access to the 2020 general election ballot, Plaintiffs must submit to the Secretary of State a petition containing the required signatures no later than October 22, 2019. Before this Court is Plaintiffs' Application for a Temporary Restraining Order enjoining enforcement of Ohio Revised Code § 3501.381. (ECF No. 2). Oral argument was held on October 11, 2019. For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Application for a Temporary Restraining Order.

I.

The Ohio Constitution reserves to the people the power to adopt or reject any law at the polls on a referendum vote. Oh. Const. Art. II, § 1. But before a referendum may be placed on the

statewide ballot, a petition signed by six percent of Ohio electors must be filed and verified by the

Ohio Secretary of State. Oh. Const. Art. II, § 1c.[1]

Plaintiffs contend that an Ohio statute governing the collection of signatures for

referendum petitions violates the First and Fourteenth Amendments to the United States

Constitution. (ECF No. 2 at 14-15). Ohio Revised Code § 3501.381 states:

> (A)(1) Any person who will receive compensation for **supervising, managing, or otherwise organizing any effort to obtain signatures** for a declaration of candidacy, nominating petition, or declaration of intent to be a write-in candidate for a person seeking to become a statewide candidate or for a statewide initiative petition or a statewide referendum petition shall file a statement to that effect with the office of the secretary of state before any signatures are obtained for the petition or before the person is engaged to supervise, manage, or otherwise organize the effort to obtain signatures for the petition, whichever is later. [emphasis added]

Any person who violates Ohio Revised Code § 3501.381 is guilty of a first-degree

misdemeanor and therefore subject to serve up to 180 days in jail, pay a fine up to $1,000, or both.

Additionally, the petition for which the offender "was compensated for supervising, managing, or

otherwise organizing the effort to obtain signatures" is entirely invalid. Ohio Rev. Code §

3501.381(C); *see Ohio Renal Assoc. v. Kidney Dialysis Patient Protection Amend. Comm.*, 154

Ohio St. 3d 86, 92, 111 N.E.3d 1139, 1145, 2018-Ohio-3320, ¶ 26 (2018).

The statement required to be filed under Ohio Revised Code § 3501.381 is done on Form

15s. Plaintiffs claim that they have coordinated the preparation, signing, processing, and filing of

approximately 1,175 Form 15s from its managers, supervisors, and circulators containing those

individuals' names, addresses, and other contact information. (ECF No. 2 at 12). Plaintiffs assert

that the pre-registration requirements of Ohio Revised Code § 3501.381 "has directly resulted in

enabling the organized, well-funded and overly aggressive opposition harass, block and threaten

---

[1] According to Plaintiffs, they must submit 265,774 valid signatures of registered Ohio voters.

the petition circulation efforts" and that petition circulators have encountered "prevalent harassment and violence." (ECF No. 2 at 33).

## II.

A district court must balance four factors when considering a request for a temporary restraining order: (1) whether the claimant has demonstrated a strong likelihood of success on the merits; (2) whether the claimant will suffer irreparable injury in the absence of a stay; (3) whether granting the stay will cause substantial harm to others; and (4) whether the public interest is best served by granting the stay. *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Cooey (Biros) v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009) (quoting *Mich Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "'When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor.'" *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998)). "With regard to the factor of irreparable injury, for example, it is well-settled that loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (internal quotations omitted).

## III.

The central issue before this Court at this stage is whether the pre-registration requirements of Ohio Revised Code § 3501.381 apply to paid petition circulators. "The Supreme Court has held that petition circulation is 'core political speech' for which First Amendment protection is 'at its zenith.'" *Citizens in Charge v. Brunner*, No. 2:10-CV-95, 2010 WL 519814, at *2 (S.D. Ohio Feb. 10, 2010) (quoting *Buckley v. Am. Constitutional Law Found. (ACLF)*, 525 U.S. 182, 186-87

(1999). "[T]he Supreme Court has reviewed First Amendment challenges to disclosure requirements in the electoral context under what it has termed 'exacting scrutiny.'" *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 413 (6th Cir. 2014) (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010). "To withstand exacting scrutiny, the Supreme Court has explained, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 414 (internal quotations omitted). "The burden a ballot-access disclosure requirement imposes on a First Amendment right may be sufficiently serious as to require strict scrutiny." *Libertarian Party of Ohio*, 751 F.3d at 414 (citing *ACLF*, 525 U.S. at 192 n.12).

In *ACLF*, the Supreme Court affirmed invalidation under the First Amendment of portions of a Colorado statute requiring monthly and final reports disclosing paid petition circulators' names, addresses, and amounts paid to those circulators. *ACLF*, 525 U.S. at 201-204. The Supreme Court held that: "[l]isting paid circulators and their income from circulation forc[es] paid circulators to surrender the anonymity enjoyed by their volunteer counterparts" and that "no more than tenuously related to the substantial interests disclosure serves, Colorado's reporting requirements, to the extent that they target paid circulators, fai[l] exacting scrutiny." *Id.* at 204 (quotations omitted). Relying on *ACLF*, this Court found an Ohio statute requiring disclosure of the names and addresses of paid circulators, and the amounts paid to those circulators, unconstitutional and granted a permanent injunction enjoining enforcement of the statute. *Citizens in Charge v. Brunner*, 689 F. Supp. 2d 992, 992 (S.D. Ohio 2010).

First Amendment protections for paid petition circulators are thus well-established. If the pre-registration requirements of Ohio Revised Code § 3501.381 extend to paid petition circulators, the statute is indistinguishable from that of the statutes struck down in *ACLF* and *Citizens in*

*Charge* and would be unlikely to survive exacting scrutiny. The analysis of the burden created by the disclosure requirement is "fact-intensive[.]" *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 383 (6th Cir. 2008). In addition, Plaintiffs have offered evidence of the burden of the pre-registration requirements on the First Amendment rights of paid petition circulators—namely, alleged harassment and intimidation of petition supports. *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010) (noting that the Supreme Court has recognized that parties may prevail under the First Amendment if they can show disclosure will result in "threats, harassment, or reprisals."). The Complaint provides examples of harassment and intimidation of individuals and vendors that have been widely reported in news media. (*See* Compl., ECF No. 1 at ¶¶ 59-60). Plaintiff Brandon Lynaugh declares that he has "been made aware of at least two petition circulators [who] have been physically assaulted and have had their property damaged by referendum petition opponents." (*See* Decl. of Lynaugh, ECF No. 4 at ¶ 24). These reports were significant enough to compel the Ohio Attorney General to send a letter to the U.S. Attorneys for the Northern and Southern Districts of Ohio regarding reports "of petition circulators being targeted, harassed and intimidated by individuals opposed to the referendum effort" and possible federal and state criminal penalties for those actions. (*See* ECF No. 2 at 9 n.7).

Defendant Frank LaRose contends that Ohio Revised Code § 3501.381 has no application to petition circulations, thereby having no relation to the statue invalidated in *ACLF*. Instead, he argues that the statute "applies only to the managers, supervisors, and organizers of signature-gathering efforts, entirely omitting ordinary, on-the-ground circulators" (ECF No. 23 at 7) and that "Ohio's Supervisor Disclosure Law does not apply to petition circulators." (*Id.* at 25). Indeed, in *Rothenberg v. Husted*, the Ohio Supreme Court stated "[n]or are paid petition circulators who are not directing the signature-gathering efforts of others required to file a compensation statement

5

'for supervising, managing, or otherwise organizing any effort to obtain signatures' for a statewide petition." 129 Ohio St.3d 447, 448 (Ohio 2011) (quoting Ohio Revised Code § 3501.381(A)(1)). Defendant LaRose argues that Plaintiffs' claimed injuries flowing from their filing of Form 15s for paid circulators are "self-inflicted." (ECF No. 23 at 11). According to him, the state's proffered interests in enforcing the statute—"detecting and deterring fraud and informing voters"—do not apply to enforcement of the statute against paid petition circulators.

Though Plaintiffs acknowledge that the statute does not "explicitly mandate" the disclosure of information for "those purely engaging in the signature solicitation itself," they claim that the effect of the statute is disclosure of information of all circulators because of the "draconian and criminal penalties for any violation" and the "indefiniteness of its scope and application[.]" (ECF No. 2 at 32). Specifically, Plaintiffs contend that because of the "otherwise organizing any effort to obtain signatures" language of Ohio Revised Code § 3501.381, the specific conduct regulated by the statute is "not precisely clear," (ECF No. 2 at 26), and at oral argument, counsel for Plaintiffs suggested that the statute may apply to individuals who are engaged in both circulation and managing, supervising, or otherwise organizing circulation efforts. Plaintiffs also claimed that *Rothenberg* does not address whether paid circulators who also are directing the signature-gathering efforts of others are required to file the statement required by Ohio Revised Code § 3501.381.

While *Rothenberg* supports Defendant LaRose's position that paid circulators are not subject to the requirements of Ohio Revised Code § 3501.381, the "otherwise organizing any effort to obtain signatures" language is sufficiently vague to cause concern for potential enforcement of the statute against paid circulators engaged in signature-collection efforts, especially in light of alleged harassment and intimidation of petition supporters discussed above. The problem becomes

6

more pronounced if a paid circulator also has potentially paid ancillary duties involving management of other circulators. Plaintiffs' have alleged how the "otherwise organizing" language could arguably be applied to paid petition circulators with varying job responsibilities and the burdens on the First Amendment rights of those circulators subject to the pre-registration requirements.

Plaintiffs have shown that they are likely to succeed on the merits of their First Amendment claim, the most important factor in determining the appropriateness of a temporary restraining order in this case. As for the remaining factors, the Court finds that Plaintiffs will suffer irreparable harm without the injunction, and the interests of the public would be best protected by the enforcement of Plaintiffs' First Amendment rights and any third-party injury could be minimized by statutory mechanisms for detecting and deterring election fraud.

The Court therefore **ORDERS** that, for a period of fourteen (14) days, Defendant Frank LaRose, in his official capacity as Ohio Secretary State, and Defendant Zach Klein, in his official capacity as City Attorney of Columbus, Ohio, and all other municipal and county prosecutors in the State of Ohio, are enjoined from enforcing the "otherwise organizing any effort to obtain signatures" language of Ohio Revised Code § 3501.381(A)(1) against paid individuals whose primary function is circulating a petition for signatures for a statewide referendum. During the duration of this Order, Plaintiffs shall compile and maintain any information required under Ohio Revised Code § 3501.381(A)(1) in the event this injunction is dissolved.

The Court **DENIES** Plaintiffs' remaining requests[2] made in their for application for a temporary restraining order.[3]

**IT IS SO ORDERED.**

10-14-2019
_____
**DATE**

~~M X~~
_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[2] Plaintiffs contend that "Ohio Rev. Code § 3501.381 regulates the content of the core political speech of only those advocating support for a prospective initiative or referendum and does not satisfy strict scrutiny." (ECF No. 2 at 20). In contrast, Defendants argue that because § 3501.381 only addresses "the process through which the people act in their sovereign capacity to legislate directly," rational basis review applies. (ECF No. 23 at 14) (quoting *Schmitt v. LaRose*, 933 F.3d 628, 644 (6th Cir. 2019) (Bush, J., concurring)). The Court acknowledges the parties' arguments but notes that § 3501.381 has been in place for years and Plaintiffs' requested relief would invalidate the entire statutory scheme. Accordingly, this content-based challenge is not amenable to the current temporary restraining order and requires further briefing and presentation of evidence to fully develop the record in a preliminary injunction proceeding.

[3] The Court notes that, in its Amicus Brief, FirstEnergy Solutions Corp. ("FirstEnergy") asserts that the Court is required to abstain and "stay this action pending resolution of the previously filed Ohio Supreme Court action involving the same parties[.]" (FirstEnergy Amicus Br. at 3, ECF No. 16-1). FirstEnergy submits that under the abstention doctrine set forth in *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), the Court should defer ruling on the constitutional issue presented in Plaintiffs' Application for a Temporary Restraining Order until a decision is rendered in *FirstEnergy Solutions Corp. v. Ohioans Against Corporate Bailouts*, Case No. 2019-1220 ("Ohio Supreme Court Action"), which is currently pending before the Ohio Supreme Court. (*Id.* at 3–4).

Abstention is not required here. In *Jones v. Coleman*, the Sixth Circuit found that abstention is not necessary when "it is far from guaranteed that the resolution of [the state court action] will correspondingly resolve any unclear issues of state law that might eliminate the federal constitutional questions" present in the case. 848 F.3d 744, 752 (6th Cir. 2017). The pivotal issue in the Ohio Supreme Court Action is whether Amended Substitute House Bill No. 6 ("H.B. 6") is subject to a referendum. (*See generally* Writ of Mandamus, ECF No. 16-2). Here, Plaintiffs challenge the constitutionality of Ohio Revised Code § 3501.381. Accordingly, the Court finds that it is "far from guaranteed that the resolution" of the Ohio Supreme Court Action will resolve the question presently before the Court. Thus, abstention is not warranted.

8